IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DISTRICT

| | |
|---|---|
| SHANNON FUTULES-MARREN, | Civil Action No. |
| Plaintiff, | 2:21-CV-137-RWS-JCF |
| v. | |
| MCCAYSVILLE ROCKS LLC, DBA BURRA BURRA ON THE RIVER, | JURY TRIAL DEMANDED |
| Defendant. | |

## COMPLAINT

COMES NOW Shannon Futules-Marren ("Plaintiff" or "Ms. Futules-Marren"), by and through her undersigned counsel, and files this Complaint, showing the Court as follows:

## NATURE OF COMPLAINT

1.

Plaintiff brings this action for relief for Defendant's violation of her rights under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq*. ("Title VII") and the Americans with Disabilities Act, as amended, 42 U.S.C. § 12111 *et seq.* ("ADA").

## JURISDICTION AND VENUE

2.

Plaintiff invokes the jurisdiction of this court pursuant to 28 U.S.C. §§ 1331 and 1343, and 42 U.S.C. § 2000e-5(f).

3.

The unlawful employment practices alleged in this Complaint were committed within this district.  In accordance with 28 U.S.C. § 1391 and 42 U.S.C. §2000(e)-5(f), venue is appropriate in this Court.

4.

Defendant McCaysville Rocks LLC, d/b/a Burra Burra on the River ("Defendant" or "Burra Burra") does business in this judicial district. Additionally, the unlawful employment practices committed by Defendant that form the basis of this lawsuit were committed within this district.

## ADMINISTRATIVE PROCEDURES

5.

Plaintiff has fulfilled all conditions necessary to proceed with this cause of action under Title VII and the ADA.  Plaintiff filed a charge of discrimination with the EEOC on September 24, 2020; the EEOC issued its Notice of Right to Sue on April 12, 2021.

6.

Plaintiff timely files this action within ninety (90) days of receipt of the Notice of Right to Sue from the EEOC.

## PARTIES

7.

Plaintiff is a female citizen of the United States of America and is subject to the jurisdiction of this Court.

8.

Defendant is qualified and licensed to do business in Georgia, and at all times material hereto has conducted business within this District.

9.

At all times relevant to this Complaint, Plaintiff was employed by and was an "employee" of Defendant, as defined under Title VII at 42 U.S.C. § 2000e(f).

10.

Defendant is now and, at all times relevant hereto, has been a domestic limited liability company engaged in an industry affecting commerce.  During all times relevant hereto, Defendant has employed fifteen (15) or more employees for the requisite duration under Title VII.  Defendant is therefore covered under Title in accordance with 42 U.S.C. § 2000e(b).

11.

During all times relevant hereto, Defendant has employed fifteen (15) or more employees for the requisite duration and period under the ADA. Defendant is therefore covered under the ADA in accordance with 42 U.S.C. § 12111(5).

12.

Defendant may be served with process by delivering a copy of the summons and complaint to their corporate Registered Agent, Lynn Doss, at 710 West First Street, Blue Ridge, GA 30513.

## FACTUAL ALLEGATIONS

13.

Ms. Futules-Marren began working for Defendant in or about July 2018 as a Bartender/Server.

14.

Ms. Futules-Marren first worked at Toccoa Riverside until Burra Burra on the River ("Burra Burra") opened in or about February 2019.

15.

Galinski Enterprises, which owns Defendant McCaysville Rock LLC, acquired Burra Burra in or about July 2019.

16.

In May 2019, Ms. Futules-Marren suffered a miscarriage.

17.

Ms. Futules-Marren took time off while she recovered.

18.

Defendant was aware that Ms. Futules-Marren had suffered a miscarriage.

19.

Karen Hawkins became the General Manager around the same time that Ms.

Futules-Marren returned to work in June 2019.

20.

Ms. Hawkins began to discriminate and retaliate against Ms. Futules-Marren

not long after she returned.

21.

Ms. Hawkins made passing remarks about Ms. Futules-Marren's medical

leave, and that she just "comes and goes."

22.

Ms. Hawkins would take Ms. Futules-Marren off the schedule and send her

home early for no reason, impacting her ability to earn money.

23.

On July 5, 2019, Ms. Hawkins told Ms. Futules-Marren that she had to have another server ring in her orders, thus impacting her ability to earn tips.

24.

Ms. Futules-Marren has also been in multiple car accidents that have left her with permanent physical disabiulities in her back and hips.

25.

Ms. Futules-Marren has been diagnosed with fibromyalgia, neuropathy, osteoarthritis in her hips, which limits her ability to move, lift, and carry.

26.

Ms. Hawkins made remarks about Ms. Futules-Marren's disability.

27.

Ms. Hawkins told Ms. Futules-Marren that maybe she should not be a server due to her physical limitations.

28.

On one occasion, Ms. Futules-Marren asked her Manager to assist her in fixing the kegs.  It required that she climb on top of them, which she had tried doing multiple times, but the lines kept messing up.

29.

Ms. Hawkins yelled at Ms. Futules-Marren, in front of customer and other employees that if she didn't know how to do her job that she didn't need to have it.

30.

Ms. Futules-Marren tried to explain that she knew how to do her job but that she was not physcially capable of continuing to climb on the kegs.

31.

Ms. Hawkins removed Ms. Futules-Marren from the bar schedule after that shift.

32.

In January 2020, Ms. Futules-Marren was scheduled for carpal tunnel surgery.

33.

Defendant was aware that Ms. Futules-Marren had taken time off for medically related reasons.

34.

Ms. Futules-Marren was never told that she may have been eligible for FMLA leave, so she had not specifically requested it by name, but she provided

Defendant with sufficient information to make it aware that her leave was protected under the FMLA.

35.

Ms. Futules-Marren was cleared to return to work in March 2020 without any limitations.

36.

Ms. Hawkins refused to schedule Ms. Futules-Marren for shifts, claiming that the restaurant was fully staffed.

37.

Ms. Futules-Marren was able to work only by covering other employees' shifts.

38.

Upon returning to work, Ms. Futules-Marren discovered that the servers had received a $1/hour raise.

39.

When Ms. Futules-Marren asked Ms. Hawkins, why she did not receive a raise as well, Ms. Hawkins claimed it was because Ms. Futules-Marren "comes and goes."

40.

In mid-March 2020, Defendant's employees were4 furloughed due to the COVID-19 pandemic.

41.

When Ms. Futules-Marren picked up her last paycheck, she disclosed to Ms. Hawkins that she was pregnant.

42.

In response, Ms. Hawkins rolled her eyes.

43.

Ms. Futules-Marren also notified Assistant General Manager Steven Jarrard of her pregnancy status.

44.

Burra Burra reopened on or about April 30, 2020.

45.

In late April 2020, Ms. Futules-Marren expressed to both Ms. Hawkins and Mr. Jarrard her desure to return to work.

46.

On April 27, 2020, Ms. Futules-Marren sent a text message to Mr. Jarrard about possibly returning to work part time.

47.

They agreed to have Ms. Futules-Marren come in on April 30, 2020, to talk about her returning.

48.

On April 30, 2020, Ms. Futules-Marren sent a text message to Mr. Jarrard asking that they reschedule, as she had been experiencing horrible nausea as a result of her pregnancy.

49.

Ms. Futules-Marren also noted the possible need for light duty due to her pregnancy related symptoms.

50.

In response Mr. Jarrard texted back, "I don't know if this is going to work out Shannon, just hold tight and I will call if we need you."

51.

Ms. Futules-Marren did not hear back from Mr. Jarrard regarding her accommodation requests or returning to work.

52.

Ms. Futules-Marren soon after experienced complications related to her pregnancy and was put on bed rest per doctor's orders.

53.

On May 19, 2020, Defendant sent letters to its employees recalling them from the furlough and asking them to return to work on May 28, 2020.

54.

The letter to Ms. Futules-Marren was sent to the wrong address and by the time she received it on May 29, 2020, the deadline to respond (May 27) had passed.

55.

Ms. Futules-Marren had been cleared to return to work the day before she received the letter.

56.

Ms. Futules-Marren called the Office Manager, Emily Hawkins, to let her know that she had just received the letter.

57.

On May 29, 2020, Ms. Futules-Marren sent a text message to Ms. Hawkins to let her know that she had just received the letter and that she would love to come back to work.

58.

Ms. Hawkins did not respond, so on May 31, 2020, Ms. Futules-Marren sent a follow up text message.

59.

On or about June 1, 2020, Ms. Hawkins texted, "We have already hired new folks as we could not continue to wait…."

60.

Ms. Futules-Marren told Ms. Hawkins that she was supposed to have returned to work already in early April, and that Mr. Jarrard had told her that he would be in contact, but that she had not heard from him.

61.

Despite this claim, Defendant hired another employee as a server the following day and had job postings for open positions.

62.

Defendant terminated Plaintiff because of her pregnancy status, because of her disability, and/or because of her disability, including the fact that Defendant regarded Plaintiff as disabled.

63.

Others outside of Plaintiff's protected class (i.e. employees who were not pregnant and/or not individuals with a disability as defined under the ADA) who were otherwise similarly situated in all relevant respects were treated more favorably.

64.

All conditions precedent to filing this action have been completed, satisfied, and/or waived.

## CLAIMS FOR RELIEF

## COUNT I:  PREGNANCY DISCRIMINATION IN VIOLATION OF THE PREGNANCY DISCRIMINATION ACT / TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

65.

Plaintiff re-alleges paragraphs 1-64 as if set forth fully herein.

66.

Defendant's actions in subjecting Plaintiff to less favorable terms and conditions of employment because of her pregnancy constitutes unlawful discrimination on the basis of her sex in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. and 42 U.S.C. § 1981a.

67.

Defendant has willfully and wantonly disregarded Plaintiff's rights, and Defendant's discrimination against Plaintiff was undertaken in bad faith.

68.

The effect of the conduct complained of herein has been to deprive Plaintiff of equal employment opportunity and has otherwise adversely affected her status as an employee because of her pregnancy.

69.

As a direct and proximate result of Defendant's violation of Title VII, Plaintiff has been made victims of acts that have adversely affected her psychological and physical well-being.

70.

Accordingly, Defendant is liable for the damages Plaintiff has sustained as a result of Defendant's unlawful discrimination.

**COUNT II:  GENDER DISCRIMINATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964**

71.

Plaintiff re-alleges paragraphs 1-64 as if set forth fully herein.

72.

When it adopted the Pregnancy Discrimination Act, Congress amended Title VII to provide that discrimination on the basis of sex includes discrimination "on the basis of pregnancy, childbirth, or related medical conditions."

73.

Defendant's actions in subjecting Plaintiff to different terms and conditions of employment on the basis of pregnancy … or related medical conditions" constitutes unlawful discrimination on the basis of her gender in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e et seq. and 42 U.S.C. section 1981A.

74.

Defendant has willfully and wantonly disregarded Plaintiff's rights, and its discrimination against Plaintiff was undertaken in bad faith.

75.

The effect of the conduct complained of herein has been to deprive Plaintiff of equal employment opportunity and has otherwise adversely affected her status as an employee because of her gender.

76.

As a direct and proximate result of Defendant's violation of Title VII, Plaintiff has been made the victim of acts that have adversely affected her economic, psychological, and physical well-being.

77.

Accordingly, Defendant is liable for the damages Plaintiff has sustained as a result of Defendant's unlawful discrimination.

## COUNT III:  DISABILITY DISCRIMINATION IN VIOLATION OF ADA

78.

Plaintiff re-alleges paragraphs 1-64 as if set forth fully herein.

79.

Plaintiff has physical impairments which limit one or more major life activities, including but not limited to lifting, bending, pulling, and working.

80.

Plaintiff's physical impairments are "disabilities" within the meaning of the ADA, as amended.

81.

Defendant was aware of Plaintiff's disabilities at the times of the actions complained of herein.

82.

Defendant regarded Plaintiff as having a disability such that she is a person with a disability within the meaning of the ADA, as amended.

83.

Plaintiff has a record of having a disability such that she is a person with a disability within the meaning of the ADA, as amended.

84.

At all times relevant to this action, Plaintiff was a qualified individual with a known or perceived disability as defined in the ADA.

85.

Defendant terminated Plaintiff's employment because of her disability, perceived disability, or record of having a disability.

86.

Defendant terminated Plaintiff's employment shortly after Plaintiff requested and used medical leave to treat her disability.

87.

By terminating Plaintiff's employment because of her disability, perceived disability, or record of having a disability, Defendant violated the ADA, as amended.

88.

Although Defendant purports to provide a legitimate non-discriminatory reason for the adverse action, this reason is a pre-text for disability discrimination.

89.

Others outside of Plaintiff's protected class (i.e. employees who were not individuals with a disability as defined under the ADA) who were otherwise similarly situated in all relevant respects were treated more favorably.

90.

Defendant's actions in subjecting Plaintiff to less favorable terms and conditions of employment constitutes unlawful discrimination on the basis of this violation of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12111 *et seq.*, 42 U.S.C. §2000e et seq. and 42 U.S.C. §1981A.

91.

Defendant has willfully and wantonly disregarded Plaintiff's rights, and Defendant's discrimination against Plaintiff was undertaken in bad faith.

92.

The Defendant's conduct complained of herein has deprived Plaintiff of equal employment opportunity and has otherwise adversely affected her status as an employee because of her disability.

93.

As a direct and proximate result Defendant's violation of the ADA, Defendant adversely affected her psychological and physical well-being, causing her harm compensable under the ADA.

94.

As a result of Defendant's discriminatory actions against Plaintiff, Defendant caused her lost compensation and benefits, emotional distress, inconvenience, humiliation, and other indignities.

95.

Pursuant to the ADA, as amended, Plaintiff is entitled to damages including but not limited to back pay and lost benefits, reinstatement, compensatory damages, equitable relief, attorneys' fees, costs of litigation and all other relief recoverable under the ADA, as amended.

96.

Defendant discriminated against Plaintiff, and, in failing and refusing to take any appropriate remedial action to remedy the unlawful employment practices, has not only deprived Plaintiff of equal employment opportunities, but exhibited malice or reckless indifference to the federally protected rights of Plaintiff.

97.

Plaintiff thus seeks compensatory and punitive damages pursuant to §102(a)(1) of the Civil Rights Act of 1991, 42 U.S.C. § 1981a(b).

## COUNT IV:  FAILURE TO ACCOMMODATE IN VIOLATION OF ADA

98.

Plaintiff re-alleges paragraphs 1-64 as if set forth fully herein.

99.

Plaintiff has physical impairments which limits one or more major life activities, including but not limited to lifting, bending, pulling, and working.

100.

Plaintiff's physical impairments are "disabilities" within the meaning of the ADA, as amended.

101.

Defendant was aware of Plaintiff's disabilities.

102.

At all times relevant to this action, Plaintiff was a qualified individual with a known or perceived disability as defined in the ADA.

103.

Plaintiff was able to perform the essential functions of her job with a reasonable accommodation.

104.

Plaintiff requested that Defendant accommodate her disability by allowing her time off for surgery.

105.

Upon receiving Plaintiff's requests for an accommodation, Defendant failed to engage in any interactive process with Plaintiff regarding her request for a reasonable accommodation of her disability.

106.

Defendant refused to provide Plaintiff with reasonable accommodations, even though to do so would not impose an undue hardship.

107.

By refusing to accommodate Plaintiff, Defendant violated the ADA, as amended.

108.

Defendant has willfully and wantonly disregarded Plaintiff's rights, and Defendant's failure to accommodate Plaintiff's disability was undertaken in bad faith.

109.

Defendant's conduct as complained of herein has deprived Plaintiff of equal employment opportunity and has otherwise adversely affected her status as an employee because of her disability.

110.

As a direct and proximate result Defendant's violation of the ADA, Defendant adversely affected her psychological and physical well-being, causing her harm.

111.

As a result of Defendant's discriminatory actions against Plaintiff, Defendant caused her to lose compensation and benefits and suffer emotional distress, inconvenience, humiliation, and other indignities.

112.

Pursuant to the ADA, as amended, Plaintiff is entitled to damages including but not limited to back pay and lost benefits, reinstatement, compensatory and

punitive damages, equitable relief, attorneys' fees, costs of litigation and all other relief recoverable under the ADA, as amended.

113.

Defendant discriminated against Plaintiff, and, in failing and refusing to take any appropriate remedial action to remedy the unlawful employment practices, has not only deprived Plaintiff of equal employment opportunities, but exhibited malice or reckless indifference to the federally protected rights of Plaintiff.

114.

Plaintiff thus seeks compensatory and punitive damages pursuant to §102(a)(1) of the Civil Rights Act of 1991, 42 U.S.C. § 1981a(b).

## COUNT V:  RETALIATION IN VIOLATION OF THE ADA, AS AMENDED

115.

Plaintiff re-alleges paragraphs 1-64 as if set forth fully herein.

116.

Plaintiff has physical impairments which limits one or more major life activities, including but not limited to lifting, bending, pulling, and working.

117.

Plaintiff's physical impairments are "disabilities" within the meaning of the ADA, as amended.

118.

Defendant was aware of Plaintiff's disabilities.

119.

At all times relevant to this action, Plaintiff was a qualified individual with a known or perceived disability as defined in the ADA.

120.

Defendant terminated Plaintiff for requesting an accommodation for her disability and/or perceived disability.

121.

Plaintiff's request for an accommodation of her disability and/or perceived disability constitutes protected conduct under the ADA, as amended.

122.

Defendant retaliated against Plaintiff by terminating her employment on the basis of her request for an accommodation.

123.

Defendant terminated Plaintiff's employment within a close temporal proximity to Plaintiff's accommodation requests.

124.

Defendant's proffered reasons for terminating Plaintiff's employment are a pretext designed to hide Defendant's retaliatory motive.

125.

Defendant's retaliatory actions against Plaintiff were in violation of the ADA, as amended.

126.

Defendant willfully and wantonly disregarded Plaintiff's rights, and Defendant's retaliation against Plaintiff was undertaken in bad faith.

127.

As a result of Defendant's retaliatory actions against Plaintiff, she has suffered lost compensation and benefits, emotional distress, inconvenience, humiliation, and other indignities.

128.

Pursuant to the ADA, as amended, Plaintiff is entitled to damages including but not limited to back pay and lost benefits, reinstatement, compensatory damages, equitable relief, attorneys' fees, costs of litigation and all other relief recoverable under the ADA, as amended.

129.

Defendant discriminated against Plaintiff, and, in failing and refusing to take any appropriate remedial action to remedy the unlawful employment practices, has not only deprived Plaintiff of equal employment opportunities, but exhibited malice or reckless indifference to the federally protected rights of Plaintiff.

130.

Plaintiff thus seeks compensatory and punitive damages pursuant to §102(a)(1) of the Civil Rights Act of 1991, 42 U.S.C. § 1981a(b).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff pray for judgment as follows:

(a)      General damages for mental and emotional suffering caused by Defendant's misconduct;

(b)      Punitive damages based on Defendant's willful, malicious, intentional, and deliberate acts, including ratification, condemnation, and approval of said acts;

(c)      Special damages for lost wages and benefits and prejudgment interest thereon;

(d)      Reasonable attorney's fees and expenses of litigation;

(e)      Trial by jury as to all issues;

(f)        Prejudgment interest at the rate allowed by law;

(g)        Declaratory relief to the effect that Defendant has violated

Plaintiff's statutory rights;

(h)        Injunctive relief of reinstatement, or front pay in lieu thereof,

and prohibiting Defendant from further unlawful conduct of the

type described herein; and

(i)        All other relief to which she may be entitled.

Respectfully submitted the 25th day of June, 2021.

**BARRETT & FARAHANY**

 /s/ *Matthew C. Billips*
Matthew C. Billips
Georgia Bar No. 057110
Catherine Gavrilidis
Georgia Bar No. 565343

*Attorneys for Shannon Futules-Marren*

1100 Peachtree Street, N.E., Suite 500
Atlanta, GA 30309
(404) 214-0120
(404) 214-0125 Facsimile
matthew@justiceatwork.com
catherine@justiceatwork.com